CRANE COMPANY v. CHRISTIAN SPECHT.

FILED FEBRUARY 6, 1894.  No. 5713.

1. A contract of guaranty entered into with one person or corporation cannot be extended to another person or corporation.

2. A contract of guaranty will be strictly construed and the

guarantor held bound only according to the terms of the instrument containing his contract, and the terms of the contract will not be extended by implication or otherwise, nor will evidence be received to vary its terms or meaning when it is not in any sense or portion ambiguous or uncertain.

3. **Construction of Contract of Guaranty.** Where S. guarantied the account of L. with the C. Bros. Mfg. Co., a corporation, for goods supplied and to be furnished by it to L., and the corporation afterward changed its name to Crane Company, and after the change furnished goods to L., *held*, in an action by the Crane Company on the guaranty to recover the value of such goods, that S. was not bound.

ERROR from the district court of Douglas county. Tried below before DOANE, J.

*Cavanagh, Thomas & McGilton*, for plaintiff in error:

The mere change of the name of a corporation does not affect its rights, property, or credits. (*Rosenthal v. Madison & Indianapolis Plank Road Co.*, 10 Ind., 358; *Town of Reading v. Wedder*, 66 Ill., 80; *Chiles v. Bridges' Heirs*, Litt. Sel. Cas. [Ky.], 420; *Trustees of Northwestern College v. Schwagler*, 37 Ia., 577; *Morris v. St. Paul & C. R. Co.*, 19 Minn., 528; *Trustees of University of Alabama v. Moody*, 62 Ala., 389.)

After change of name, all actions on old obligations must be brought in new name. (*Mayor v. Seaber*, 3 Burr. [Eng.], 1866; *Scarborough v. Butler*, 3 Lev. [Eng.], 237; *Sunapee v. Eastman*, 32 N. H., 470; *Cotton v. Miss'ssippi & Rum River Boom Co.*, 22 Minn., 372; *Pape v. Capitol Bank of Topeka*, 20 Kan., 440.)

Change in name of a corporation does not abate a suit. (*Thomas v. Frederick County School*, 7 Gill & J. [Md.], 369.)

*Wharton & Baird, contra:*

A contract of guaranty or letter of credit binds the maker only in accordance with the strict letter of the con-

tract, and any variation, no matter whether such variation enlarges or contracts the liability of the guarantor, will be sufficient to release the guarantor from any liability, and courts will not enter into the question as to whether or not the liability of the guarantor has been increased or decreased by reason of the change. (*Birckhead v. Brown*, 5 Hill [N. Y.], 641; *Robbins v. Bingham*, 4 Johns. [N. Y.], 475; *Dobbin v. Bradley*, 17 Wend. [N. Y.], 422; *Sollee v. Meugy*, 1 Bailey Law [S. Car.], 620; *Pemberton v. Oakes*, 4 Russell [Eng.], 154; *Taylor v. McClung*, 2 Houston [Del.], 24.)

HARRISON, J.

In this case, an action in the district court of Douglas county, Nebraska, the plaintiff the Crane Company, plaintiff in the court below and in this court, sought to recover of defendant Christian Specht a certain sum which it claimed due from defendant as guarantor of the account of one A. C. Lichtenberger to the Crane Bros. Manufacturing Company. The petition of plaintiff is as follows:

"The plaintiff in the above entitled cause, complaining of defendant therein, for a cause of action states that said plaintiff is a corporation duly organized under the laws of the state of Illinois; that on and prior to August 23, 1889, Crane Bros. Manufacturing Company was a corporation organized and doing business under the laws of the state of Illinois, and was engaged in the sale of plumbing and other materials in the city of Omaha, Nebraska. That prior to said August 23, 1889, said Crane Bros. Manufacturing Company had sold and furnished to one A. C. Lichtenberger goods and materials; that for said goods said Lichtenberger was indebted to said Crane Bros. Manufacturing Company, and at said date said Crane Bros. Manufacturing Company refused to furnish said Lichtenberger additional goods or material, unless the payment of the bill already incurred by him, and the payment of goods

thereafter delivered, should be guarantied by some responsible party; that in consideration of Crane Bros. Manufacturing Company's selling additional goods to said Lichtenberger, said defendant Christian Specht executed his written guaranty, whereby he agreed to pay the indebtedness already incurred by said Lichtenberger with said Crane Bros. Manufacturing Company and the payment of all materials which said Lichtenberger should thereafter purchase of them; that thereafter said Crane Bros. Manufacturing Company, relying upon said guaranty, continued to sell and deliver to said Lichtenberger goods and materials,—a copy of said guaranty is hereto attached, marked Exhibit 'A,' and made a part of this petition; that afterwards the said plaintiff became incorporated and succeeded to the business and interests of said Crane Bros. Manufacturing Company and continued to carry on said business and to supply the customers of said Crane Bros. Manufacturing Company; that, relying upon said guaranty made by said Christian Specht to said Crane Bros. Manufacturing Company, said plaintiff sold and furnished said Lichtenberger goods and materials; that said sales made by plaintiff to said Lichtenberger were made with the knowledge and consent of said defendant and at his request, and with the knowledge and intention of said plaintiff and said defendant that said defendant should be liable to the said plaintiff for goods sold to said Lichtenberger under said guaranty to said Crane Bros. Manufacturing Company, and that said goods were furnished by said plaintiff relying upon said guaranty and at the request of said defendant that said goods should be so furnished; that a statement of said goods furnished by said Crane Bros. Manufacturing Company, and said plaintiff to said Lichtenberger in pursuance of said guaranty made by said defendant, is hereto attached, marked Exhibit 'B,' and made a part hereof; that on account of goods so furnished there remains now due said plaintiff the sum of eight

hundred eighty-one dollars and ninety-nine cents ($881.99), which amount said Lichtenberger has failed and neglected to pay.   Wherefore the plaintiff demands judgment against said defendant in the sum of one thousand dollars ($1,000), and the costs of suit."

The defendant answers the petition as follows:

"First—That he is not advised as to whether or not the plaintiff is a legal corporation, and cannot admit, and therefore denies the same.

"Second—The defendant, further answering, admits that the Crane Bros. Manufacturing Company sold and furnished to the said A. C. Lichtenberger on or about August 23, 1889, some goods and merchandise; and further admits that on the 23d day of August, 1889, he executed the guaranty mentioned in the petition, of which Exhibit 'A' is a copy.

"Third—This defendant, further answering, says that he is not advised as to whether or not the plaintiff succeeded to the business interests of Crane Bros. Manufacturing Company and continued to carry on said business and to supply the customers of said Crane Bros. Manufacturing Company, and cannot admit, and therefore denies the same.

"Fourth—The defendant, further answering, denies that the plaintiff sold and furnished said Lichtenberger goods and materials as alleged in said petition, and denies that said alleged sales were made to said Lichtenberger with the knowledge and consent of the plaintiff and at his request, and denies that the defendant requested the plaintiff to sell any goods whatever to said Lichtenberger, or ever in any manner whatever agreed to become liable for the same, and denies that there is due the plaintiff the sum of $881 from said Lichtenberger, or any part thereof.

"And the said defendant, further answering, denies that he is indebted to the plaintiff in any sum whatever.

"Wherefore the defendant, having fully answered said

petition, prays to be hence dismissed with his reasonable costs."

Exhibit "A," the contract of guaranty, attached to the petition and the foundation of this action, is as follows:

### EXHIBIT "A."

"OMAHA, NEB., August 23, 1889.

"*Messrs. Crane Bros. Manufacturing Company, City.*— GENTLEMEN: I will guaranty the payment of your account against A. C. Lichtenberger, and for all materials he may purchase from this date. The above is to hold good until written notice is given you by me.

"Yours truly,                    C. SPECHT."

A jury was waived and trial had to the court. There was a finding and judgment in favor of defendant. Plaintiff filed a motion for new trial, which was argued and overruled, and the case was brought here by the plaintiff for review.

The evidence in the case discloses that on the 23d day of August, 1889, the defendant executed and delivered unto the Crane Bros. Manufacturing Company the guaranty in question (Exhibit "A"); that on or about January 20, 1890, the corporation, at an annual meeting of its stockholders then held, changed its name from Crane Bros. Manufacturing Company to Crane Company, no change or alteration whatever being at this time made in the officers, management, business, or location of place of business, and after such change continued to furnish goods and materials to Lichtenberger, for which goods and materials Lichtenberger failed to pay; that defendant Specht was requested to make a new guaranty to the Crane Company, but refused to do so, and never did execute such a guaranty; that the action is brought upon the account running through the whole time during which Lichtenberger purchased goods of the corporation, both under the old and the new name, for a balance due upon the account which is due for goods

sold to Lichtenberger after the change in the name of the corporation.

The question raised by the bill of exceptions and strenuously argued by counsel is, can the Crane Company recover upon the contract of guaranty given by defendant to Crane Bros. Manufacturing Company? The attorneys for plaintiff contended that the Crane Company was organized on the 20th day of January, 1890, being the Crane Bros. Manufacturing Company under the new name, Crane Company; that it was composed of the same persons, managed by the same officers, engaged in the same business and at the same location; that there was merely a change in the name, and no other or further change in the composition or operations of the company, and hence it was entitled to recover on this as well as other contracts to which the Crane Bros. Manufacturing Company was a party. The defendant's attorneys claim that the Crane Company cannot recover, by virtue of the guaranty given by defendant to the Crane Bros. Manufacturing Company, any sum due it for goods sold or furnished Lichtenberger after the change of its name to "Crane Company." The contention in the case resolves itself to the question, did the change in the name of the corporation deprive it of the right to recover, upon the contract of guaranty given to it by defendant in its former name, the price of goods furnished after the change in style to the party whose account was guarantied to it under the old name? The answer to this question will be most readily obtained, it seems to me, by an examination of the nature of the contract of guaranty and the construction to be given to it.

In 1 Brandt, Suretyship & Guaranty [2d ed.], pp. 134 and 135, sec. 93, it is said, in discussing such contracts: "A rule never to be lost sight of in determining the liability of a surety or guarantor is, that he is a favorite of the law and has a right to stand upon the strict terms of his obligation, when such terms are ascertained. This is a rule

13

universally recognized by the courts, and is applicable to every variety of circumstances." Again it is said: "A surety or guarantor usually derives no benefit from his contract. His object generally is to befriend the principal. * * * The guarantor is only liable because he has agreed to become so. He is bound by his agreement and nothing else. * * * It has been repeatedly decided that he is under no moral obligation to pay the debt of his principal. Being, then, bound by his agreement alone and deriving no benefit from the transaction, it is eminently just and proper that he should be a favorite of the law and have a right to stand upon the strict terms of his obligation. To charge him beyond its terms or to permit it to be altered without his consent would be, not to enforce the contract made by him, but to make another for him."

In *Miller v. Stewart*, 9 Wheat. [U. S.], 680, Story, J., says: "Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation he is bound, and no farther. It is not sufficient that he may sustain no injury by a change in the contract, or even that it may be for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal."

It being well settled that the foregoing are the rules of law by which such contracts as the one in the case at bar are governed and construed, I will pass now to some of the cases in which these rules have been particularly applied to the facts as developed in the cases, selecting such as are similar to the one under consideration and more or less directly in point.

In the case of *Allison v. Rutlege*, 5 Yerg. [Tenn.], 194, the defendant addressed a letter to "Mr. Allison," by which he became surety for the payment of the purchase price of

some bacon purchased by one Cooper, and was sued on the instrument by John and Joseph Allison, as guarantor, for $100, the price of the bacon.    Catron, C. J., in delivering the opinion of the court, says: "Can, under any circumstances, a recovery be had in this action by force of the guaranty?    It is addressed in the singular to Mr. Allison. Rutlege undertook for the debt of Cooper, is bound by the writing and this only.    The contract cannot be varied or its meaning explained without violating the statute of frauds.    He did not address himself to two Allisons, but to one.    The paper, from its face, could not be given in evidence to sustain the joint action, and it could not be proved by parol that two were meant."

In the case of *Smith v. Montgomery,* 3 Tex., 199, the defendant Montgomery wrote and forwarded a letter of credit as follows :

"Colorado, Dec. 27, 1839.

*"Col. Smith & Pilgrim*—Gentlemen : Mr. A. W. Tennard wishes to get some dry goods on time.    If you will furnish, I will see you paid as far as to the amount of ($3,000) three thousand dollars,

" And much oblige yours, with respect,

"James S. Montgomery."

This letter was addressed on the back to Smith alone. It appears that Smith and Pilgrim had been partners in business, but a very short time prior to the date of the letter had dissolved the partnership.    The letter being addressed on the back to Smith alone, was delivered to him and he supplied the goods to Tennard, who failed to pay for them, and Smith instituted the action to recover from Montgomery, as guarantor, the price of the goods to the amount of the guaranty.    Mr. Justice Wheeler, in delivering the opinion of the court, says: "Upon consideration, we are all of the opinion that we must look to the address upon the face of the letter, and not to the direction upon the back of it, to ascertain the party to whom its

application and promise were intended, by the writer, to have been made; that, bearing upon its face a direction and address full and complete, and free from ambiguity, we must take that as the certain criterion to determine its application without regard to the discrepancy in the superscription. If the letter did not bear upon its face the proper address, resort might be had to the superscription, or perhaps to other extrinsic evidence, if necessary, to determine its direction and application. (1 How., 169.) But when the contract upon its face is complete and perfect, and certain to every intent, as well in respect to the parties as the subject-matter, we do not think it admissible to resort to anything extrinsic to control the express terms and clear import of the face of the instrument. * * * It is a well settled rule, applicable to this 'class of cases, that the liability of a guarantor or surety cannot be extended by implication or otherwise beyond the actual terms of his engagement. It does not matter that a proposed alteration would even be for his benefit, for he has a right to stand upon the very terms of his agreement. The case must be brought strictly within the terms of the guaranty, when reasonably interpreted, or the guarantor will not be liable."

In the case of *Evansville National Bank of Evansville, Ind., v. Kaufman*, 93 N. Y., 273, it is said: "It is always competent for a guarantor to limit his liability, either as to time, amount, or parties, by the terms of his contract, and if any such limitation be disregarded by the ₊party who claims under it, the guarantor is not bound. It follows that no one can accept its propositions or acquire any advantage therefrom unless he is expressly referred· to or necessarily embraced in the description of the persons to whom the offer of guaranty is addressed."

"Guarantor liable only to person to whom he makes the guaranty." (*Second Nat. Bank of Peoria v. Diefendorf*, 90 Ill., 396.)

A guarantor's engagement does not make him answer-

able for goods furnished by any other person than the one with whom the contract of guaranty is made.    He is not answerable beyond the scope of his engagement. ( *Walsh v. Bailie,* 10 Johns. [N. Y.], 179; *Penoyer v. Watson,* 16 Johns. [N. Y.], 99.)

" Where a letter of credit is addressed to a particular firm no one else can rely on it as a guaranty." (*Taylor v. Wetmore,* 10 O., 491.)

In *Barnes v. Barrow,* 61 N. Y., 39, it being a case in which, under a written contract of guaranty made with a particular person, a partnership of which that person was a member sought to recover the value of goods furnished the person for whose debt or default the guarantor stood charged to answer, it is said: "On the face of this contract it is plain that no one could act upon it, except the persons named in it." And Burge on Suretyship (ch. 3) is cited as follows: " The contract of suretyship is to be construed strictly; that is, the obligation is not to be extended to any other subject, to any other person, or to any other period of time than is expressed, or necessarily included, in it." And further it is stated: " In the Roman law the rule now under consideration assumes the form of a maxim: 'An agreement of guaranty made with one person cannot be extended to another person.'"

To the same effect as the above cases is that of *Taylor v. McClung's Executor,* 2 Houston [Del.], 24, cited by attorneys for defendant in error in their brief, and which is a case very much in point.    Our own court has recognized the same principle in the case of *Lee v. Hastings,* 13 Neb., 508.

The case most directly in point is that of *Grant v. Naylor,* 4 Cranch [U. S.], 205.    In this case John and Jeremiah Naylor brought an action against Daniel Grant on a letter or contract of guaranty which was addressed to John and Joseph Naylor.    Chief Justice Marshall in the opinion in the case says: "That the letter was really designed for

John and Jeremiah Naylor cannot be doubted, but the principles which require that the promise to pay the debt of another shall be in writing, and which will not permit a written contract to be explained by parol testimony, originate in a general and a wise policy, which this court cannot relax so far as to except from its operation cases within the principles. Already have so many cases been taken out of the statute of frauds, which seem to be within its letter, that it may well be doubted whether the exceptions do not let in many of the mischiefs against which the rule was intended to guard. * * * On examining the cases which have been cited at the bar, it does not appear to the court that they authorize the explanation of the contract which is attempted in this case. This is not a case of ambiguity. It is not an ambiguity patent, for the face of the letter can excite no doubt. It is not a latent ambiguity, for there are not two firms of the name of John & Joseph Naylor & Co., to either of which this letter might have been delivered. * * * In such a case the letter itself is not a written contract between Daniel Grant, the writer, and John and Jeremiah Naylor, the persons to whom it was delivered. To admit parol proof to make such a contract is going further than courts have ever gone, where the writing is itself a contract, not evidence of a contract, and where no pre-existing obligation bound the party to enter into it."

In the case at bar the defendant Specht addressed the letter, or contract of guaranty sued upon, to the Crane Bros. Manufacturing Company, and not to the Crane Company. At the time the contract was entered into there was no such corporation in existence as the Crane Company. The contract of guaranty made by Specht was not in any manner for his own benefit, but to oblige, befriend, or aid Lichtenberger, and was such a contract as authorities uniformly hold will be strictly construed, and when not uncertain, indefinite, or ambiguous, will not be extended in any par-

ticular beyond the scope of its terms.    On January 20,
1890, when the change of the name of the corporation from
Crane Bros. Manufacturing Company to Crane Company
was made there was no notice given defendant that such
change had been made.    The change could not and did not
pass or transfer the right of the Crane Bros. Manufacturing
Company to the Crane Company to furnish goods to
Lichtenberger and rely upon the guaranty of Specht to
answer for the debt or default of Lichtenberger.    The
goods, the value of which it is sought to recover in this
action, were furnished to Lichtenberger after the Crane
Bros. Manufacturing Company became the Crane Com-
pany, January 20, 1890, and this is not an action for the
price of goods furnished by the Crane Bros. Manufacturing
Company to Lichtenberger, which, under certain circum-
stances as to assignment, and possibly without, would
be a different case and raise another point or question.
The instrument containing the guaranty was plain, clear,
and definite in its terms, and not in any particular ambig-
uous, and certainly not as to the person or corporation to
whom or which it was addressed.    It was a contract of
guaranty to and with the Crane Bros. Manufacturing
Company, and not the Crane Company, although the
persons composing the first may have been identical
with those of the second, and the introduction of the
letter, showing as it does the guaranty to the Crane
Bros. Manufacturing Company, was not competent to,
and does not, support the action on the guaranty by
the Crane Company, the plaintiff in this case, nor do I
think that evidence could be received to show that the
Crane Company had the same officers, and was, under the
same management, engaged in the same business and in the
same location as the Crane Bros. Manufacturing Company,
or that it had the same stockholders and merely changed
its name, or, if received, that it would alter or affect in any
manner the relations or rights of the parties to the action.

At the time .the goods were · furnished to Lichtenberger there was no Crane Bros. Manufacturing Company. It had ceased to exist or had become, by change of name, the Crane Company, and Specht could rely upon the exact terms of his contract and demand that his rights and liability be measured by the guaranty as written, signed, and delivered by him, to be bound only for goods furnished to Lichtenberger by the Crane Bros. Manufacturing Company as existing at the time the contract was made and by the name as set forth in his letter. The judgment of the lower court was right and is

AFFIRMED.